# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>              Plaintiff,<br><br>    v.<br><br>CHRISTOPHER AUBIN, ANCHOR STATE CAPITAL LLC, f/k/a ANCHOR STATE INVESTMENTS LLC, and ANCHOR STATE PROPERTIES LLC,<br>              Defendants,<br>  and<br><br>ASHLEY CORCORAN, RUSSELL MILLER, JR., and MILLER PROPERTY GROUP LLC,<br><br>             Relief Defendants. | Civil Action No. 1:25-cv-11379-FDS<br><br>**FILED UNDER SEAL** |

## MEMORANDUM IN SUPPORT OF PARTIALLY-ASSENTED TO MOTION TO STAY THIS ACTION DURING THE PENDENCY OF THE RELATED CRIMINAL INVESTIGATION AND ANY PROCEEDINGS

Defendants Christopher Aubin, Anchor State Capital, LLC, fs/k/a/ Anchor State Investments, LLC, and Anchor State Properties, LLC (the "Defendants") respectfully move for a stay of these proceedings during the pendency of a related criminal investigation and any resulting proceedings. Relief Defendant Ashley Corcoran assents to the requested stay. Relief Defendants Russell Miller, Jr. and Miller Property Group likewise assent to the stay, provided that the Court resolves certain questions related to the pending sale of property in Providence, Rhode Island that is the subject of a prior stipulation and order. Dkt. 42. The Securities and Exchange Commission ("SEC") opposes the requested stay.

## RELEVANT BACKGROUND

On or about May 15, 2025, the SEC filed this lawsuit alleging that between April 2023 and December 2024, Defendant Christopher Aubin and his companies, Anchor State Capital LLC and Anchor State Properties LLC (collectively, "Anchor State"), misappropriated funds Mr. Aubin solicited from investors on the premise that they would be used to make short-term loans for real estate and other projects. *See* Dkt. 1 (Complaint), ¶¶ 1, 20. The SEC alleges that Mr. Aubin used some of the funds to make loans other than those specified in investor contracts, and that he used some of the funds for personal and business purposes, or to repay earlier investors, in ways that investors did not contemplate. On or about August 22, 2025, the SEC moved for leave to file an Amended Complaint to add claims against Relief Defendants Russell Miller, Jr. and Miller Property Group. Dkt. 13. That motion was granted, without objection, on August 26, 2025. Dkt. 21.

On the same day that the original Complaint was filed, federal agents raided Mr. Aubin's home pursuant to a search warrant obtained by the U.S. Attorney's Office for the District of Rhode Island as part of an investigation into the same conduct that underlies the SEC Complaint. The criminal and civil investigations are coordinated. The U.S. Attorney's Office has shared evidence with the SEC, and the SEC relied on some of that evidence—recordings of 19 interviews of investors conducted by law enforcement agents—in seeking a preliminary injunction. *See* Dkt. 16-1, Decl. of Patrick J. Noone, at ¶¶ 6, 8–14; *see also id.* at ¶ 48 ("The Commission's Staff has communicated with staff of the United States Attorney's Office. Based on those conversations, I understand that law enforcement authorities seized a vehicle that was titled in Aubin's name, and certain luxury branded accessories on or about May 15, 2025.").

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

As the SEC's submissions in this matter have made clear, Mr. Aubin does not have the financial resources to litigate against the SEC and the US Attorney's Office at the same time. *See* Dkt. 16 at 9 ("The current cash balances in the Anchor State and Aubin accounts of which the Commission is aware are low. Combined, the total cash balance of all of those accounts (as of about April 15, 2025) was approximately $4,000. The Commission is not aware of other potentially valuable assets that remain in Aubin's possession.").

## ARGUMENT

### A.    Applicable Law

"It is well established that federal courts can opt to stay civil proceedings in deference to parallel criminal proceedings. " *S.E.C. v. TelexFree, Inc.,* 52 F. Supp. 3d 349, 352 (D. Mass. 2014) (Gorton, J.); *see also S.E.C. v. Liberty*, No. 2:18-CV-00139-JDL, 2019 WL 3752907, at *1 (D. Me. Aug. 8, 2019) (granting stay of civil proceedings over SEC objection and noting, "The power to stay civil proceedings in deference to parallel criminal proceedings should be invoked when the interests of justice counsel in favor of such a course.") (citation and internal quotation marks omitted). "While a court is not compelled to stay a civil proceeding during the pendency of a

parallel criminal investigation or prosecution, such a scenario has been recognized as one in which a stay may well be appropriate." *Telexfree*, 352 F. Supp. 3d. at 352.

The First Circuit has highlighted the following factors that courts often consider in consideration motions to stay:

> 1) the interests of the civil plaintiff in proceeding expeditiously with the civil litigation, 2) the hardship to the defendant, including the burden placed upon him should the cases go forward in tandem, 3) the convenience of both the civil and criminal courts, 4) the interests of third parties, 5) the public interest, 6) the good faith of the litigants (or the absence of it) and 7) the status of the cases.

*Telexfree,* 52. F. Supp. 3d at 352 (quoting *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004)).  A court should also consider as "[t]he most important factor," the extent to which the issues in the civil and criminal cases overlap.  *Green v. Cosby*, 177 F. Supp. 3d 673, 678 (D. Mass. 2016).

**B.     <u>This Action Should be Stayed</u>**

The Court should stay this Action to protect Mr. Aubin's constitutional rights and to safeguard the public interest in the fair and expeditious administration of justice. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████     In such circumstances, granting a stay is routine in this Circuit and others.  *See Telexfree*, 52 F. Supp. 3d at 352.

**A.    This Action Should be Stayed Because of the Near Total Overlap of Facts and Evidence.**

"[T]he degree to which the civil issues overlap with the criminal issues," is "sometimes described as a preliminary or threshold factor, or even the most important factor," in deciding whether to stay a civil action pending a related criminal action.  *Green*, 177 F. Supp. 3d at 678 (internal quotations omitted); *see also S.E.C. v. Shkreli*, No. 15-CV-7175, 2016 WL 1122029, at *4 (E.D.N.Y. Mar. 22, 2016) (noting that "[c]ourts have consistently recognized [the overlap of the issues in criminal and civil cases] as a particularly significant factor in granting a stay," and collecting cases).  The reason is apparent:  "Where there is overlap, there is a greater concern about self-incrimination."  *Shkreli*, 2016 WL 1122029, at *4.

The Amended Complaint in this matter and the criminal investigation are predicated on identical facts and the same alleged scheme.  The SEC alleges that Mr. Aubin solicited investments in his companies, Anchor State Capital LLC and Anchor State Properties LLC, on the basis that the money "would be used to finance various short-term 'hard money' lending deals, property-related financing projects, or real estate investments."  Dkt. 16 at 2.  The SEC alleges that Mr. Aubin "did not use the investors' funds to make the loans that were promised," but instead used some of the money to fund loans other than those specified, some of it for business and personal expenses, and some of it to repay earlier investors.  *Id*. at 2, 10.  ██████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████    Frank Decl., ¶ 4.

The evidence underlying the two cases is, on information and belief, substantially identical, and includes loan documents, bank records, communications, and witness interviews.  *See* Dkt.

16-1, Noone Decl. at ¶¶ 6-8, 15. As noted above, law enforcement authorities have shared recorded interviews with the SEC, which has used them in support of its case.

Accordingly, the substantial overlap of facts and evidence weighs strongly in favor of a stay. *See Shkreli*, 2016 WL 1122029, at *4.

### B. The Interest Of The SEC in Proceeding Expeditiously With The Civil Litigation Favors A Stay.

The SEC will not be prejudiced by a stay. Mr. Aubin has ceased all business operations related to Anchor State and the company is defunct. ███████████████████████ ████████████████████████████████ Frank Decl. ¶ 7. The government has, as noted, already seized Mr. Aubin's vehicle, and by the SEC's account, he has virtually no remaining assets. With Mr. Aubin's assent, the SEC has secured a stipulation and order securing the proceeds from the sale of property in Providence, Rhode Island that—in the wake of a seven-month investigation that has included analysis of bank records and interviews of investors—it has identified as "the only currently identified asset" available to repay the investors it alleges were harmed. Dkt. 16 at 2; Dkt. 42. Accordingly, there is no risk that a stay would result in the dissipation of assets available for a potential recovery. At the same time, ███████████████████████

██████████████████████████████████████████████████████

████████████████████████████████ Frank Decl. ¶ 5. ███████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████



Accordingly, a stay would conserve SEC and judicial resources insofar as ██████ ████████████████████ could well obviate the need for this matter to be litigated.

### C.    Mr. Aubin Will Suffer Significant Prejudice Without A Stay.

"The most pressing consideration" in a case like this is a defendant's Fifth Amendment right against self-incrimination.  *Green*, 177 F. Supp. 3d at 679.  A "stay can protect a civil defendant from facing the difficult choice between being prejudiced in the civil litigation, if the defendant asserts his or her Fifth Amendment privilege, or from being prejudiced in the criminal litigation if he or she waives that privilege in the civil litigation."  *Id.*

Proceeding with this action now, prior to the resolution of the criminal proceedings, would severely burden Mr. Aubin's Fifth Amendment right.  If Mr. Aubin waives his Fifth Amendment privilege in order to respond to the Amended Complaint and defend against its allegations, he "faces the prospect of incriminating himself in the criminal case by disclosing evidence that may tend to support a conviction."  *Id.*.  But if he asserts his Fifth Amendment privilege and declines to answer the Amended Complaint or to comply with discovery requests, he faces a potential adverse inference in this proceeding.  *See, e.g.*, *Shkreli,* 2016 WL 1122029, at *3 n.3 (noting that "criminal defendants frequently seek stays in parallel civil enforcement proceedings, often due to

an adverse inference that can arise from a party's invocation of the Fifth Amendment privilege against self-incrimination").

Moreover, Mr. Aubin does not have sufficient resources to litigate this action and a criminal defense simultaneously, and doing so would prejudice his ability to focus adequate time to the defense of each action. *See, e.g.*, *TelexFree*, 52 F. Supp. 3d at 353 (granting a stay after noting that "[a] stay in the civil enforcement proceeding will allow [the defendant] to avoid substantial litigation costs while the criminal trial is pending"); *Liberty*, 2019 WL 3752907, at *3 (same); *In re Worldcom, Inc. Sec. Litig.*, No. 02 CIV. 3288 (DLC), 2002 WL 31729501, at *9 (S.D.N.Y. Dec. 5, 2002) (granting stay because, in part, "there is little reason to deplete [the defendant's] resources through payment of attorney's fees to defend or participate in civil litigation that, while important, is essentially duplicative"); *cf. S.E.C. v. Kanodia*, 153 F. Supp. 3d 478, 482 (D. Mass. 2015) (denying a stay opposed by the defendant but noting that "[t]he Court would be more inclined to issue a stay if … having to defend both matters simultaneously compromised a defendant's ability to defend himself in either proceeding").

Accordingly, the need to safeguard the defendant's constitutional rights strongly favors a stay.

### D.    The Convenience of Both The Civil and Criminal Courts Favors A Stay.

A stay would permit the criminal proceedings to move ahead, which could well narrow the issues and "expedite resolution of the civil action once the stay is lifted." *TelexFree*, 52 F. Supp. 3d at 353. Indeed, this case is "likely to benefit to some extent from the criminal case no matter its outcome. For example, evidence gathered and presented during the criminal prosecution can be used in the civil action." *Shkreli*, 2016 WL 1122029, at *6 (cleaned up, citations and internal

quotation marks omitted).  As such, "a stay would conserve judicial resources." *Nat'l Ass'n of Gov't Emps. v. Mulligan*, 849 F. Supp. 2d 167, 173 (D. Mass. 2012).

###### E.    The Interests of Third Parties and the Public Favor a Stay.

The public has an interest in the unimpeded and timely resolution of criminal proceedings, and in ensuring that those proceedings are fair and expeditious and safeguard the constitutional rights of putative defendants.  *Adams v. Magnusson*, No. 1:19-CV-00547-GZS, 2020 WL 2770682, at *2 (D. Me. May 28, 2020) (acknowledging the public interest in "proceed[ing] to a conclusion without any delay"); *Brock v. Tolkow*, 109 F.R.D. 116, 121 (E.D.N.Y. 1985) (noting that "a stay of discovery does not mean that enforcement of the public interests at stake in the civil case will be indefinitely deferred," because "a criminal prosecution serves to enforce those same interests").  This interest "outweighs the civil interests here." *TelexFree,* 52 F. Supp. 3d at 353 ("The SEC, acting on behalf of the public, and defendants certainly has a substantial interest in the timely resolution of this proceeding.  Nevertheless, the public interest in unimpeded criminal law enforcement outweighs the civil interests here.").  No third party interests will be prejudiced by a stay, given that the SEC has already secured all available assets for any potential resolution, and a stay may serve to expedite this matter once it is lifted.

###### F.    Good Faith of Litigants Favors a Stay.

Mr. Aubin makes this request in good faith based on the facts and allegations of the parallel civil and criminal matters and applicable law.  Mr. Aubin does not seek to delay this action for its own sake, but rather makes this request for the sole purpose of safeguarding his fundamental constitutional rights.

**G.      The Status of the Civil and Criminal Cases Favors a Stay.**

This action is in its early stages.  The Amended Complaint has not been answered, and discovery has not begun.  Considerable assets have been secured—with the Defendants' assent—for the protection of interested parties. ███████████████████████████████

███████████████████████████████████████████████████████████████████████

███████  In such circumstances, the status of the respective civil and criminal proceedings favors a stay.  *Green*, 177 F. Supp. 3d at 681 (granting stay of criminal defendant's deposition where "[a] trial date has not yet been set").

<u>**CONCLUSION**</u>

For the foregoing reasons, Mr. Aubin respectfully requests that this Court stay these proceedings in the interests of justice pending the outcome of the related criminal matter.

Date: September 25, 2025                    Respectfully submitted,

                                                          /s/ *Stephen E. Frank*
                                                          Stephen E. Frank (BBO# 568455)
                                                          QUINN EMANUEL URQUHART &
                                                          SULLIVAN, LLP
                                                          111 Huntington Avenue, Suite 520
                                                          Boston, MA 02199
                                                          Tel: (617) 712-7100
                                                          Fax: (617) 712-7200
                                                          stephenfrank@quinnemanuel.com

                                                          *Counsel for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing document filed today through the Court's CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  September 25, 2025                 /s/ *Stephen E. Frank*
                                                          Stephen E. Frank

10